UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>THE ALIERA COMPANIES, INC. d/b/a Aliera Healthcare, Inc., *et al.*,[1]<br><br>     Debtors. | Case No. 21-11548 (TMH)<br>Currently pending in the U.S. Bankruptcy Court for the District of Delaware |
| ALIERA LT, LLC, AS LIQUIDATING TRUSTEE FOR THE ALIERA COMPANIES, INC. D/B/A ALIERA HEALTHCARE INC., ET AL. and NEIL F. LURIA, IN HIS CAPACITY AS THE TRUSTEE OF THE SHARITY MINISTRIES, INC., LIQUIDATING TRUST,<br><br>     Plaintiffs,<br><br>v.<br><br>SYNOVUS BANK,<br><br>     Defendant. | Adversary Proceeding No. 23-05214-JRS |

**<u>DEFENDANT SYNOVUS BANK'S MOTION TO DISMISS COMPLAINT</u>**

Synovus Bank ("**Synovus**"), by and through counsel, hereby moves pursuant to Rules 8, 9 and 12(b)(6) of the Federal Rules of Civil Procedures (the "**Federal Rules** or **Rule**"), made applicable in bankruptcy by Rules 7008, 7009 and 7012 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules** or **Rule**"), to dismiss with prejudice the claims asserted by Aliera LT, LLC, as Liquidating Trustee for the Aliera Companies, Inc. d/b/a Aliera Healthcare

---

[1] The jointly administered Debtors in these Chapter 11 cases along with the last four digits of their federal tax identification number include: The Aliera Companies Inc. (9555) (Case No. 21-11548), Advevo LLC (6736) (Case No. 22-10124), Ensurian Agency LLC (3244) (Case No. 22-10123), Tactic Edge Solutions LLC (2923) (Case No. 22-10122), and USA Benefits & Administrators LLC (5803) (Case No. 22-10121).

Inc., *et al*. ("**Aliera**") and Neil F. Luria, in his capacity as the Trustee of the Sharity Ministries,

Inc., Liquidating Trust ("**Sharity**", together with Aliera, the "**Plaintiffs**") raised in the *Complaint*

(D.I. 1) (the "**Complaint**").  The grounds for the motion are more fully described in the supporting

memorandum filed contemporaneously herewith.

Dated: May 31, 2024


   EVERSHEDS SUTHERLAND (US) LLP

   /s/  *David A. Wender*_____
    David A. Wender (Ga. Bar. No. 748117)
    Nathaniel T. DeLoatch (Ga. Bar. No. 216330)
    999 Peachtree Street, NE, Suite 2300
    Atlanta, GA 30309-3996
    Telephone: 404.853.8175
    Facsimile: 404.853.8806
    Davidwender@eversheds-sutherland.com
    NathanielDeLoatch@eversheds-
    sutherland.com

   *Attorneys for Defendant Synovus Bank*

## Certificate of Service

I, Nathaniel T. DeLoatch, certify that I am over the age of 18 and that on May 31, 2024, I filed and served copies of the (i) Defendant Synovus Bank's Motion To Dismiss Complaint and (ii) accompanying memorandum in support on all interested parties, by using the Bankruptcy Court's Electronic Case Filing program which sends a notice of the above-listed document and an accompanying link to the document to the parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program.

I further certify that, on that same day, I caused the foregoing to be served via First Class Mail, postage prepaid on the parties listed below:

| | | |
|---|---|---|
| Leon S. Jones<br>JONES & WALDEN LLC<br>699 Piedmont Avenue NE<br>Atlanta, GA 30308 | James J. Varellas III<br>VARELLAS & VARELLAS PLLC<br>360 East Vine Street, Suite 320<br>Lexington, KY 40507 | Jerome P. Prather<br>GARMER & PRATHER, PLLC<br>141 North Broadway<br>Lexington, KY 40507 |
| William H. Anderson<br>HANDLEY FARAH & ANDERSON PLLC<br>5353 Manhattan Circle, Suite 204<br>Boulder, CO 80303 | Simon Wiener<br>HANDLEY FARAH & ANDERSON PLLC<br>68 Harrison Avenue, Suite 604<br>Boston, MA 02111 | |

May 31, 2024.

By: /s/ *Nathaniel DeLoatch*
    Nathaniel T. DeLoatch
    Georgia Bar No. 216330

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>THE ALIERA COMPANIES, INC. d/b/a<br>Aliera Healthcare, Inc., *et al.*,[1]<br><br><br><br>       Debtors. | Case No. 21-11548 (TMH)<br>Currently pending in the U.S.<br>Bankruptcy Court for the District of<br>Delaware |
| ALIERA LT, LLC, AS LIQUIDATING<br>TRUSTEE FOR THE ALIERA COMPANIES,<br>INC. D/B/A ALIERA HEALTHCARE INC.,<br>ET AL. and NEIL F. LURIA, IN HIS<br>CAPACITY AS THE TRUSTEE OF THE<br>SHARITY MINISTRIES, INC.,<br>LIQUIDATING TRUST,<br><br>       Plaintiffs,<br><br>v.<br><br>SYNOVUS BANK,<br><br>       Defendant. | <br><br><br><br><br><br><br><br><br><br><br>Adversary Proceeding No. 23-05214-JRS |

**MEMORANDUM IN SUPPORT OF DEFENDANT
SYNOVUS BANK'S MOTION TO DISMISS COMPLAINT**

---

[1] The jointly administered Debtors in these Chapter 11 cases along with the last four digits of their federal tax identification number include: The Aliera Companies Inc. (9555) (Case No. 21-11548), Advevo LLC (6736) (Case No. 22-10124), Ensurian Agency LLC (3244) (Case No. 22-10123), Tactic Edge Solutions LLC (2923) (Case No. 22-10122), and USA Benefits & Administrators LLC (5803) (Case No. 22-10121).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  PRELIMINARY STATEMENT ...............................................................................1

II.  FACTUAL BACKGROUND ..............................................................................3

    A.  The Debtors' Fraudulent Scheme. ....................................................................3
    B.  Plaintiffs' Allegations about Synovus' Role in the Alleged Fraudulent
        Scheme. ..............................................................................................................4
    C.  The Claims for Relief. ......................................................................................4

III.  STANDARD OF REVIEW ................................................................................5

IV.  ARGUMENT AND CITATIONS OF AUTHORITY.........................................7

    A.  Counts I Through V Fail as a Matter of Law. ...................................................7
    B.  Counts VI Through X Fail as a Matter of Law. ...............................................13
    C.  Counts VI Through XII Fail To State Claims Upon Which Relief Can Be
        Granted. ..............................................................................................................17
    D.  The Complaint Should be Dismissed because it is a Shotgun Pleading That
        Violates Federal Rule 8(a) and Eleventh Circuit Law. ..........................................24

    CONCLUSION ...........................................................................................................25

Synovus Bank ("**Synovus**")[2] moved this Court to dismiss the Plaintiffs' Complaint pursuant Federal Rules 8, 9 and 12(b)(6), made applicable in this adversary proceeding by Bankruptcy Rules 7008, 7009 and 7012. For the reasons set forth herein, Synovus' motion should be granted.

## I.     PRELIMINARY STATEMENT

This adversary proceeding represents a misguided attempt by the Plaintiffs to hold Synovus, an unaffiliated third-party financial institution and service provider, responsible for the alleged fraud of the Debtors and their principals. Once this Court properly disregards the Complaint's conclusory allegations and legal conclusions (which constitute most, if not all, of the Complaint's allegations against Synovus), the remaining allegations establish that Synovus was nothing more than a typical bank that processed transactions in the ordinary course of its business.

The Complaint contains no well-pleaded allegations establishing that Synovus (i) actually knew that the Debtors and their principals were perpetuating an alleged fraud, (ii) assisted the Debtors in perpetuating the alleged fraud, (iii) harmed the Debtors in anyway, or (iv) benefitted in its own right from the alleged fraud. At bottom, while the Complaint alleges that the Debtors and their principals were involved in a fraud that would have continued (and actually did continue) regardless of Synovus, the Complaint's shotgun approach does not pass muster as against Synovus. This is evidenced by, among other things, the contemporaneous actions (the "**Related Adversary Proceedings**"),[3] and the complaints in the Related Adversary Proceedings (the "**Mirror-Image**

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in Synovus' *Motion to Dismiss Complaint* filed contemporaneously herewith or the Plaintiffs' Complaint, as applicable.

[3] *See* Case Nos. 23-5215, 23-5216, 23-5217, and 23-5218.

**Complaints**"), filed by the Plaintiffs against other banks.[4]  Ultimately, as set forth below, the Plaintiffs' "throw it at the wall and see if it sticks" approach fails for at least five reasons.

*First*, the Fraudulent Transfer Claims fail as a matter of law because (i) Aliera's deposits and withdrawals into and out of its depository accounts at Synovus are not "transfers" of property under applicable law and (ii) Synovus was not an "initial transferee" of Aliera's property.[5]

*Second*, the Fraud Claims, Negligence Claim, Unjust Enrichment Claim, and Civil Conspiracy Claim fail as a matter of law because the Plaintiffs lack standing to bring those claims.

*Third*, the Fraud Claims fail as a matter of law because the claims are barred by the doctrine of *in pari delicto*, which prevents the Debtors from recovering for wrongs perpetrated by the Debtors and their principals—in whose shoes the Plaintiffs stand.  The Fraud Claims also fail as they are wrought with pleading deficiencies, including, without limitation, failure to satisfy the heightened pleading standard required by Federal Rule 9(b).

*Fourth*, the Negligence Claim fails as a matter of law because it is barred by the doctrine of *in pari delicto*, (ii) the Complaint fails to assert that Synovus breached an actual duty of care owed to the Debtors,[6] and (iii) the Complaint fails to allege how Synovus' purported negligence is the proximate cause of the Debtors' alleged injury.[7]

---

[4] A comparison of the Mirror-Image Complaints and the Complaint against Synovus confirms that the Plaintiffs merely appended the allegations made against the earlier financial institution(s).

[5] Even though the Complaint alleges that Synovus charged the Debtors "various fees for its services," (*see* Compl. ¶ 104), these claims should be dismissed because the Complaint fails to make any allegations concerning the nature of such fees.

[6] Notwithstanding a citation to O.C.G.A. § 51-1-4 (which defines negligence), the Complaint fails to cite a single "statute or [relation] created by contract, express or implied" that imposes a duty of care.  *See, e.g.*, O.C.G.A. § 51-1-8.

[7] Instead, as discussed below, the Complaint alleges that the Debtors' harm (if any) arose from the Debtors' and their principals' misconduct.

*Fifth*, the Unjust Enrichment Claim, Civil Conspiracy Claim and the Fee Claim all fail as a matter of law because they are not supported by well-pleaded allegations that establish the alleged causes of action.

*Finally*, the Complaint fails as a matter of law because it fails to satisfy the pleading standards of Federal Rule 8(a). Specifically, when viewed by itself and in conjunction with the Mirror-Image Complaints, the Complaint is a textbook "shotgun" pleading that fails to permit Synovus to formulate an appropriate response. For these reasons, and as set forth more fully below, the Complaint must be dismissed in its entirety.

## II.   FACTUAL BACKGROUND[8]

### A.   The Debtors' Fraudulent Scheme.

1.     The Complaint alleges that the Debtors perpetuated a fraudulent scheme involving the offering of health care sharing ministries ("**HCSM**") products, "which are offered under exceptions to the Affordable Care Act and state insurance law." (*See* Compl. ¶ 1). The Plaintiffs allege, without citing any express ruling or finding of fact, that the Debtors were "effectively" running a Ponzi scheme. (*See id.* ¶ 61, 66). Ultimately, the Plaintiffs merely allege that the Debtors became subject to court proceedings in various states concerning whether the Debtors' HCSM products complied with those state's insurance laws.[9] (*See id.* ¶¶ 38–41, 64–65).

2.     On July 8, 2021, Sharity filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy

---

[8] These facts are taken from the allegations in the Complaint that are well-pleaded, which, for the purpose of the motion only, Synovus assumes are true. For the avoidance of doubt, nothing herein shall constitute an admission or acknowledgment that any allegation in the Complaint is true or accurate.

[9] As discussed in greater detail below, the Plaintiffs seek to overcome their pleading deficiencies against Synovus by conflating the various debtors and their Members.

Court for the District of Delaware (the "**Delaware Bankruptcy Court**").  On December 3, 2021, an involuntary Chapter 11 petition was filed against Aliera.  On December 21, 2021, Aliera and the Aliera Subsidiaries each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia.  These cases were later transferred to the Delaware Bankruptcy Court.

> **B.**     **Plaintiffs' Allegations about Synovus' Role in the Alleged Fraudulent Scheme.**

3.     With respect to Synovus, the Complaint alleges that (i) Aliera maintained accounts with Synovus during an undefined period of time and that Sharity maintained accounts with Synovus between 2020 and 2021, (*id*. ¶¶ 98–99) and (ii) Synovus facilitated the Debtors' fraud and breach of fiduciary duties and participated in the alleged misconduct by allowing the Debtors to open accounts and maintain their accounts for a period of time, (*id.* ¶¶ 116–216).

> **C.**     **The Claims for Relief.**

4.     The Complaint asserts twelve (12) claims for relief against Synovus.  In Counts I through V (the "**Fraudulent Transfer Claims**"), the Plaintiffs seek to avoid and recover certain unidentified Transfers made by one or more of the Debtors to Synovus pursuant to Sections 544, 550 and 551 of the Bankruptcy Code and O.C.GA. §§ 18-2-74(a)(1), (2), and -75(a).[10]  (*Id.* ¶¶ 118–66).  In Counts VI and VII (the "**Fraud Claims**"), the Plaintiffs allege that, by opening and maintaining bank accounts that enabled the Debtors to maintain their operations, Synovus committed fraud and conspired with the Debtors to commit fraud under O.C.G.A. § 51-6-1  (*Id.*

---

[10] Instead of identifying any actual transfer, the Complaint broadly defines Transfers as "transfers or incurred obligations, without limitation, in the form of deposits, service charges, and account fees for the benefit of Synovus," as fraudulent transfers under Sections 544, 550, and 551 of the Bankruptcy Code and Georgia state law.

¶¶ 167–82).[11]  In Count VIII (the "**Negligence Claim**"), the Plaintiffs allege that Synovus, by opening and maintaining bank accounts, breached a duty to protect the Debtors and their customers from the risks imposed by the Debtors' principals.  (*Id.* ¶¶ 183–94).  In Count IX (the "**Unjust Enrichment Claim**"), the Plaintiffs seeks damages from Synovus based on a general assertion that the Debtors conferred a financial benefit on Synovus for which the Debtors should be compensated.  (*Id.* ¶¶ 195–201).  In Count X (the "**Civil Conspiracy Claim**"), the Plaintiffs allege that, by opening and maintaining bank accounts, Synovus conspired with Aliera's and Sharity's "directors and officers, and/or other third parties, to commit the tortious acts" set forth in the Complaint.  (*Id.* ¶ 205).  Finally, in Counts XI (the "**Punitive Damages Claim**") and XII (the "**Fee Claim**"), the Plaintiffs seek an award of punitive damages and the payment of attorneys' fees and costs associated with the Plaintiffs' claims.  (*Id.* ¶¶ 210–16).

## III.    STANDARD OF REVIEW

5.    Pleadings are governed by Federal Rule 8(a), which requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails "to one degree or another . . . to give the defendant[] adequate notice of the claims against [it] and the grounds upon which each claim rests[]" fails to satisfy Federal Rule 8(a).  *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

6.    When considering a motion to dismiss, courts are called upon to first identify all allegations that are "mere conclusory allegations, unwarranted factual inferences, or legal conclusions," *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007), or "[t]hreadbare recitals

---

[11] It must be noted that the fraudulent conduct alleged against Synovus by the Plaintiffs is the same conduct that the Plaintiffs spend the majority of the Complaint explaining was undertaken by the Debtors.  (*See* Compl. ¶¶ 171–72).

of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These "are not entitled to the assumption of truth" and therefore must be discarded. *Id.* at 679. Courts must then determine whether the remaining well-pleaded facts, taken as true, "plausibly give rise to an entitlement to relief." *Id.* When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007)). The well-pleaded factual allegations must "nudge[] [the] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. Moreover, dismissal is warranted when, assuming the truth of the factual allegations, there is a dispositive legal issue which precludes relief or if the claim is based on an indisputably meritless legal theory. *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1009–10 (11th Cir. 1992).

7.      Additionally, when alleging fraud, plaintiffs must satisfy the higher pleading standard imposed by Federal Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied if the complaint sets forth

> (i) precisely what statements were made in what documents or oral representations or what omissions were made [,] (ii) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, [,] (iii) the content of such statements and the manner in which they misled the plaintiff, and (iv) what the defendants obtained as a consequence of the fraud.

*Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007). While the Plaintiffs need not allege specific facts related to Synovus' state of mind, they still must plead "the who, what, when, where, and how of the allegedly false statements . . . ." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008).

## IV. ARGUMENT AND CITATIONS OF AUTHORITY[12]

### A. Counts I Through V Fail as a Matter of Law.

#### a) The Transfers are not "transfers" under applicable law.

9.       Counts I through V should be dismissed because the alleged Transfers are not "transfers" under the Bankruptcy Code or Georgia law.   The threshold issue in a fraudulent conveyance action is whether a transfer occurred.  *See Wallace v. McFarland (In re McFarland)*, 619 Fed. Appx. 962, 967 (11th Cir. 2015); *see also Pettie v. Bonertz (In re LendXFinancial, LLC)*, 2012 Bankr. LEXIS 1993, at *20 (Bankr. N.D. Ga. Mar. 16, 2012) (the analysis under Section 548 of the Bankruptcy Code and Georgia's fraudulent transfer statutes are substantially the same).   The Bankruptcy Code defines a "transfer" as the act of "disposing of or parting with" property.   11 U.S.C. § 101(54).   The definition of "transfer" under Georgia's fraudulent conveyance law is effectively identical.  *See* O.C.G.A. § 18-2-71(16) (a transfer only occurs if there is a "disposing of or parting with" property).   Thus, if a debtor never "disposes of or parts with" funds in its own bank account, an avoidable transfer did not occur and the fraudulent transfer action must fail.  *See* 11 U.S.C. § 548(a)(1) (the trustee may avoid "any transfer . . . that was made . . . ."); O.C.G.A. §§ 18-2-74, 75.

10.       Numerous courts, including the Court of Appeals for the Eleventh Circuit (the "**Eleventh Circuit**"), have held that deposits and transfers in and out of bank accounts controlled by the account holders are not "transfers" under fraudulent transfer law because the account holders do not relinquish control over the deposited property.  *See, e.g., Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1200 (11th Cir. 1988) (holding that

---

[12] Synovus also joins in the arguments made by Merril Lynch, Pierce, Fenner & Smith Incorporated, and Bank of America, N.A., FFB Bank f/k/a Fresno First Bank, BMO Harris Bank, N.A., and Wells Fargo Bank, N.A. in the Related Adversary Proceedings.

transfers deposited into a bank account were not recoverable "transfers" under Section 548 because the bank did not have actual control over the funds); *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1327 (M.D. Fla. 2015), *aff'd*, 677 Fed. Appx. 573 (11th Cir. 2017) (holding that since the principal "was essentially transferring funds to and from himself, he (and the entities he controlled) never disposed of or parted with the 'assets' and therefore no transfers took place."); *In re Rollaguard Sec., LLC*, 570 B.R. 859, 873 (Bankr. S.D. Fla. 2017) (finding that a debtor's regular deposits into its own unrestricted bank accounts are not transfers within the meaning of Section 101(54) or Fla. Stat. § 726.102(14)); *In re Whitley*, 848 F. 3d 205 (4th Cir. 2017) (holding that deposits into a bank account were not "transfers" and summarizing cases holding same).

11.    The Eleventh Circuit's recent decision in *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296 (11th Cir. 2020) is instructive.[13]   In *Isaiah*, the Eleventh Circuit affirmed the lower court's decision dismissing a receiver's complaint brought under Florida's Uniform Fraudulent Transfer Act (FUFTA) that sought to recover funds transferred to a bank during the course of a Ponzi scheme.   The receiver, who brought the claims on behalf of the entity whose principals perpetuated the Ponzi scheme, argued that the banking transactions in which the principals transferred, withdrew, and shuffled funds to and from the bank constituted fraudulent transfers. *Id*. at 1302.   The Eleventh Circuit disagreed with the receiver's arguments and instead found that a routine bank deposit does not constitute a transfer to the bank within the meaning of FUFTA. *Id*. [14]   The Eleventh Circuit explained that the relevant inquiry is not one of ownership but control and, where an account holder retains total control over and has unfettered access to the funds in

---

[13] Although the Eleventh Circuit's decision in *Isaiah* is based on the definition of "transfer" under Florida law, Georgia's definition of "transfer" mirrors the definition considered by the Eleventh Circuit in *Isaiah*. *See Isaiah*, 960 F.3d at 1302–03; *compare* Fla. Stat. § 726.102(14) *with* O.C.G.A. § 18-2-71(16).

[14] *See* n.13 *supra*.

his account, he has not relinquished his interest or control over the funds. *Id.* at 1303.  The Eleventh

Circuit found that "the complaint makes clear, the principals retained full access to and control

over the funds in the . . . bank accounts: they withdrew funds, wrote countless checks, made

several purchases, and initiated wire and other transfers at will.  They did not 'dispos[e] of or part[]

with an asset or interest in an asset'" when they deposited money into the bank accounts. *Id.*  Thus,

the Eleventh Circuit concluded that no transfer of funds to the bank occurred within the meaning

of FUFTA.  *Id.*

12.     Here, like in *Isaiah*, the Plaintiffs' Complaint acknowledges that the Debtors and

their principals retained full access and control over the funds in their Synovus accounts.

Consequently, the Transfers are not "transfers" under O.C.G.A. § 18-2-71(16) or Section 101(54)

of the Bankruptcy Code.  *See In re Whitley*, 848 F.3d 205, 208–10 (4th Cir. 2017) (deposits into

the customers own unrestricted accounts do not constitute "transfers" under Section 101(54) of the

Bankruptcy Code's definition—a specific circumstance not explicitly contemplated by the

statute's framers).  Therefore, the Fraudulent Transfer Claims fail as a matter of law and must be

dismissed.

> b)    <u>Even if the Transfers are avoidable, Aliera cannot recover from
> Synovus because it is not an "initial transferee" under Section 550
> of the Bankruptcy Code.</u>

13.     Courts hold that when a bank receives money for the purpose of depositing funds

into a customer's account, "the bank never has actual control over the funds and is not a Section

550 initial transferee" from whom a trustee can recover a fraudulent transfer.  *Menotte v. United*

*States of America (In re Custom Contractors, LLC)*, 745 F.3d 1342, 1350 (11th Cir. 2014); *see*

*also Chase & Sanborn*, 848 F.2d at 1200; *Super Vision Int'l, Inc. v. Mega Int'l Comm. Bank Co.*,

534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008).  The fact that a bank may exercise at least some legal

control over the funds is irrelevant. *See In re Custom Contractors, LLC*, 745 F.3d at 1350 ("[o]ur case law . . . stands for the proposition that, when a bank receives funds in the form of a deposit, the attendant obligations owed to the transferor—namely to return the funds upon request—are sufficiently important that we will not hold the bank liable as an initial transferee in spite of the significant control it exercises over the funds."). Indeed, "[t]he Eleventh Circuit has repeatedly pointed to the depository bank as the ultimate example of a conduit for purposes of transferee analysis." *In re Rollaguard Sec., LLC*, 570 B.R. 859 at 875.

14.    Here, the Complaint does not allege that Synovus exercised control over the funds in the accounts. To the contrary, the Complaint alleges that Aliera exercised full control over funds being transferred into or out of the Debtors' accounts with Synovus. (Compl. ¶¶ 48, 50). Thus, Synovus is not an initial transferee from whom Aliera can recover under Section 550 of the Bankruptcy Code. Therefore, the Fraudulent Transfer Claims fail as a matter of law and must be dismissed with prejudice.

c)    <u>The Fraudulent Transfer Claims fail to satisfy the pleading requirements of Federal Rules 8(a) and 9(b).</u>

15.    Even if the Court were to find, at this stage, that the Transfers were "transfers" to Synovus and that Synovus was an initial transferee, the Fraudulent Transfer Claims should still be dismissed because the Complaint fails to satisfy applicable pleading standards. While the law appears unsettled as to the level of specificity that Federal Rule 8(a) requires in the context of a constructive fraudulent transfer claim, "at the very least, the rules of procedure require the pleader of a preferential or fraudulent transfer claim to reasonably identify the types of transfers to be avoided." *See State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 292–93 (Bankr. S.D. Ohio 2007); *cf. Gavin Solmonese, LLC v. Corp. Servs. Co. (In re Daily Bread Winddown, LLC)*, 2022 Bankr. LEXIS 3078, *7–9 (Bankr. D. Del. Nov. 1, 2022) (to survive a

motion to dismiss a constructive fraud claim "the trustee must identify the dates, amounts, sources, and transferee for the transfers."). Ultimately, a complaint must allege sufficient information to permit a defendant to identify the transfer sought to be avoided and to provide an appropriate affirmative defense. *See Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.)*, 339 B.R. 570, 575 (Bankr. D. Del. 2006).

16.     Here, the Complaint fails to satisfy even the most lenient application of Federal Rule 8(a)'s pleading standard. The Complaint does not identify (i) any specific transfer or (ii) the amount of any transfer (or even an aggregate amount of transfers). (*See* Compl. ¶ 123) (defining Transfers so broadly as to include every interaction between Aliera and Synovus). Moreover, the Complaint fails to provide a defined timeframe within which the alleged transfers occurred. (*See id.* ¶ 98) (Synovus "provided banking services to Aliera until . . . December 2021). Furthermore, while the Complaint alleges that Synovus charged banking fees, this allegation is still insufficient under Federal Rule 8(a) for the same reasons stated above and because the Complaint does not differentiate between fees charged to Aliera or Sharity. (*See id.* ¶ 104) (merely alleging that "during the time Aliera and/or Sharity banked with Synovus, it charged them with various fees for its services.").

17.     The Complaint fails to address a lack of reasonably equivalent value because it contains no factual information "from which one could conclude that the Debtors did not 'get what they gave.'" *In re Daily Bread Winddown, LLC)*, 2022 Bankr. LEXIS 3078 at*7–9. Here, like in *In re Daily Bread Winddown, LLC,* the Complaint "barely describes the nature of what the Debtors received at all" beyond merely stating that the Debtors received banking services. *Id*. at *8. This is insufficient under Federal Rule 8(a). *See id.* (dismissing a constructive fraud claim where the

complaint provided nothing to support that the debtors overpaid for services, let alone adequately described what the services were).

18.    The Complaint also fails to satisfy Federal Rule 9(b), which applies to Count II's actual fraud claim. *See Spradlin v. Wrigley's 7-711, Inc. (In re Licking River Mining, LLC)*, 572 B.R. 830, 837 (Bankr. E.D. Ky. 2017) (a fraudulent transfer claim on account of actual fraud must allege, "for each transfer it seeks to avoid: the date of the transfer; the amount of the transfer (or if the transfer was of property other than money, the property that was transferred and its value); the name of the transferor; the name of the initial transferee; and the consideration paid, if any, for the transfer.") (internal quotation omitted).  As set forth above, the Complaint fails to allege any information sufficient to satisfy Federal Rule 9(b).

19.    Ultimately, the Complaint fails to satisfy the requirements of Federal Rules 8(a) and 9(b) because the Complaint's well-pleaded allegations are insufficient to permit Synovus to determine the applicability of its affirmative defenses and to submit an appropriate response.  As such, the Fraudulent Transfer Claims fail to state a claim and must be dismissed.

<strong>d)    <u>To the extent Plaintiffs seek to recover transfers made by Sharity to Synovus, these claims are barred by the statute of limitations.</u></strong>

20.    To the extent Plaintiffs seek. through the Fraudulent Transfer Claims or otherwise, to avoid transfers made by Aliera to Synovus, this claim is barred by the statute of limitations. Section 546 of the Bankruptcy Code provides, in pertinent part, that an action under Section 544 must be commenced before the later of:

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A).

11 U.S.C. §546(a)(1).

21.     Section 546(a)(1)(B) applies to trustees appointed under Section 1104 of the Bankruptcy Code, not trustees appointed pursuant to a liquidating chapter 11 plan.  *See Scher v. Slater Ent., LLC*, 2006 WL 1799039, at *12 (D.N.J. June 28, 2006) (dismissing fraudulent transfer claims due to expiration of limitations period.); *see also Alberts v. Arthur J. Gallagher & Co. (In re Greater Se. Cmty. Hosp. Corp. I)*, 341 B.R. 91, 96 (Bankr. D.D.C. 2006) ("Alberts is a plan trustee and … was not appointed or elected under 11 U.S.C. § 1104 as would be required to render applicable the one-year extension of the limitations period provided for under § 546(a)(1)(B).").

22.     Here, Sharity filed its chapter 11 case on July 8, 2021.  Therefore, the time by which it could commence an avoidance action under the Bankruptcy Code was July 8, 2023.  As this deadline has passed, Sharity is barred from pursuing any such causes of action.  To the extent Plaintiffs seek to do so here, it should be denied.

**B.     Counts VI Through X Fail as a Matter of Law.**

a)      Plaintiffs lack standing to assert the tort claims.

23.     The Plaintiffs lack standing to bring the tort claims because the Debtors cannot pursue damages resulting from torts they perpetrated.  *O'Halloran v. First Union Nat. Bank of Florida,* 350 F.3d 1197, 1202 (11th Cir. 2003).  A bankruptcy trustee only has standing to bring claims that the debtor could have instituted had it not entered bankruptcy.  *Id.*  A trustee does not acquire rights or interests greater than those of the debtor.  *Official Comm. Of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149–50 (11th Cir. 2006).  Under Eleventh Circuit law, a debtor that committed a tort does not have standing to pursue damages resulting from that tortious conduct.  *O'Halloran*, 350 F.3d at 1202.  Thus, the Debtors, as alleged perpetrators of tortious conduct, did not possess claims to pursue, and, thus, neither do the Plaintiffs.

24.     In *O'Halloran*, the Eleventh Circuit affirmed that in a case where the debtor is a perpetrator of a Ponzi scheme, the trustee "is not the right party to pursue any damages resulting from the Ponzi scheme itself" as the debtor could not have possibly suffered injury.  *O'Halloran*, 350 F.3d at 1202–03.  The Eleventh Circuit confirmed that such a claim would be "fruitless" as:

> [T]here is little doubt that the complaint alleges [debtor] to be one of the principal culprits in the Ponzi scheme. Thus, neither [debtor] nor its bankruptcy trustee can sue anyone, including the defendant, for the Ponzi scheme torts. [Debtor], whose primary existence was as a perpetrator of the Ponzi scheme, cannot be said to have suffered injury from the scheme it perpetrated.

*Id.*

25.     Similarly, in *Isaiah*, the Eleventh Circuit affirmed a Federal Rule 12(b)(6) dismissal of a plaintiff receiver's tort claims against a third-party bank because the "corporation—and the receiver who stands in the shoes of the corporation—lacks standing to pursue such tort claims because the corporation, 'whose primary existence was as a perpetrator of the Ponzi scheme, cannot be said to have suffered injury from the scheme it perpetrated.'"  *Isaiah*, 960 F.3d 1296, 1306 (11th Cir. 2020) (quoting *O'Halloran*, 350 F.3d at 1203).  The Eleventh Circuit held that the claims belonged "to the investors who suffered losses from the Ponzi scheme, not the Receivership Entities."  *Id.*  Accordingly, the Eleventh Circuit held that the receiver lacked standing to bring the tort claims against a third party and dismissed all tort claims.  *Id.* at 1307–08.

26.     Here, like in *O'Halloran* and *Isaiah*, the Complaint's allegations make clear that the Debtors were principal culprits in the alleged Ponzi scheme and that their primary existence was as a perpetrator of the alleged torts.  Therefore, because the Debtors cannot recover damages for their own tortious conduct, the Plaintiffs do not have standing to bring the tort claims.  Moreover, the Plaintiffs do not have standing to bring claims belonging to the Members.  As such, the Counts VI through X must be dismissed.

- 14 -

b)    The Fraud Claims and Negligence Claim are barred by the doctrine
of *in pari delicto*.

27.    Counts VI through VIII should be dismissed because they are barred by the doctrine

of *in pari delicto*.  The doctrine of *in pari delicto* mandates that a plaintiff who has participated in

wrongdoing may not recover damages resulting from the wrongdoing where the plaintiff bears

fault equal to or greater than that of the defendant.  *Official Comm. Of Unsecured Creditors of

PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006); *Laddin v. Edwards*, 2005 U.S. Dist.

WL 6076939 at *3 (N.D. Ga. 2005).  The Plaintiffs here are subject to this doctrine because they

stand "in the shoes" of the Debtors and, consequently, are barred from "recover[ing] for a wrong

that the [Debtors] essentially took part in."  *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54,

63 (2d Cir. 2013) (finding that the doctrine of *in pari delicto* is applicable to Ponzi scheme claims

brought by a bankruptcy trustee); *see Edwards*, 437 F.3d at 1151 (applying *in pari delicto* to a

trustee's Ponzi scheme claims because the debtor would have been subject to them outside of

bankruptcy).  The Court may consider *in pari delicto* in the context of a motion to dismiss when

its applicability appears on the face of the complaint.  *Gordon v. Harman (In re Harman)*, 529

B.R. 352, 357 (Bankr. N.D. Ga. 2015).

28.    Here, the case of *Silverman v. Citibank, N.A.*, 2023 U.S. LEXIS 198786 (S.D.N.Y.

Nov. 6, 2023) is instructive.  In *Silverman*, the trustee filed an action asserting claims on behalf of

the debtor company and its investors against a bank that acted as a regular deposit account bank

for the debtor when its insider was perpetrating a Ponzi scheme.  *Id*. at *14–15.  The trustee alleged

that the bank aided and abetted the Ponzi scheme because it failed to recognize suspicious

transactions and failed to timely end its banking relationship with the perpetrator, and that the

suspicious transactions coupled with the bank's suspicions demonstrated the bank's actual

knowledge of the fraud.  *Id*.  The court held that the trustee's claim on behalf of the company was

barred by *in pari delicto* because the debtor's misconduct was imputed onto the trustee. *Id*. at *23.[15]

29.    Here, the Complaint's allegations concede that the Debtors and their agents controlled, devised and marketed the alleged Ponzi scheme, furthered the alleged scheme through their misrepresentations to the Members, and exercised complete control over the flow and disposition of funds received therefrom.    As for Synovus, the Complaint alleges solely that Synovus provided routine banking services.[16]    Given the fault alleged in the Complaint, the doctrine of *in pari delicto* bars the Fraud Claims and Negligence Claim as a matter of law. *See Miller v. Lomax*, 266 Ga. App. 93, 103 (2004) (a claim for conspiracy cannot proceed where the underlying fraud claim has failed); *Luzinski v. Peabody & Arnold LLP (In re Gosman)*, 382 B.R. 826, 837–38 (S.D. Fla. 2007) (dismissing a claim barred by *in pari delicto* where the defendant was accused of negligence by the plaintiff trustee who stood in the shoes of the debtor who had committed actual fraud).    Therefore, Counts VI through VIII should be dismissed.[17]

---

[15] Notably, the court in *Silverman* also found that the "adverse interest exception" did not apply where the insider or agent's fraud was not committed against the debtor but on its behalf. *Id*. at *24.   The analysis turns on whether the debtor was harmed by the fraud itself—not the discovery of the fraud.  *Id*. at *25.  Moreover, the court found that "if the fraudulent conduct [of the insider] enables a business to survive . . . the test is not met, regardless of whether the conduct is against the long-term interests of the business." *Id*. at *24 (internal quotations omitted).  This is the case here.  Thus, the "adverse interest exception" does not apply.  *See id*. at *25 (the exception does not apply because the complaint alleges that the company benefitted from the fraud).

[16] While the Complaint appears to allege that Synovus interacted with the Members and, in one instance, made knowingly false representations to a Member, this allegation appears to be made in error as the next sentence acknowledges that Aliera, not Synovus, interacted with the Member. (Compl. ¶ 56).   Internal inconsistencies like this are one of many examples of the difficulties Synovus faces in responding to the Complaint in its current form.

[17] Though Count VIII is labeled as a negligence and gross negligence claim, a close review of the allegations demonstrates that it is merely a repackaged claim for "aiding and abetting a breach of fiduciary duty." (*See* Comp. ¶ 203).  But, even if labeled correctly, such a claim fails as a matter of law because Georgia law does not recognize a claim for aiding and abetting a breach of fiduciary

C.    **Counts VI Through XII Fail To State Claims Upon Which Relief Can Be Granted.**

      a)    <u>The Fraud Claims fail to state a claim upon which relief can be granted.</u>

30.    While the Plaintiffs dedicate a majority of the Complaint to describing the Debtors' and their principals' alleged fraudulent acts, the Complaint is devoid of factual allegations concerning Synovus' fraudulent conduct.[18]  To establish a claim for fraud, a complaint must allege that: (i) the defendant made the representations; (ii) the defendant knew the representations were false at the time; (iii) the defendant made the representations with the intention and purpose of deceiving the plaintiff; (iv) the plaintiff reasonably relied upon such representations; and (v) the plaintiffs sustained the alleged loss and damage as the proximate result of the representations.  *See, e.g., Keller v. Henderson,* 248 Ga. App. 526, 527 (2001).  Moreover, Federal Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Such particularity requires that a plaintiff identify the precise statements of misrepresentation or omission, the content of those statements, the when, where, and by whom the statements were made, and what the defendant obtained by committing fraud.  *Ziemba v. Cascade Int'l, Inc.,* 256

---

duty.  *See Edwards*, 437 F.3d at 1157 ("Georgia courts have not recognized a cause of action for aiding and abetting a breach of fiduciary duties.") (internal citation omitted).

[18] To the extent that the Plaintiffs actually allege that Synovus committed fraud against the Members, this is not clearly pled in the Complaint,  In any event, such a claim fails as a matter of law because (i) the Complaint contains no allegation that Synovus made any representations or omissions to the Members and (ii) the Plaintiffs do not have standing to assert such claims on behalf of the Members.  *See Flatau v. Stewart (In re Stewart)*, 339 B.R. 524, 528 (M.D. Ga. 2006) (finding that Section 544 did not permit a trustee to pursue RICO claims on behalf of creditors, explaining that a trustee's powers under Section 544 only enable the trustee to "avoid any transfer of property of the debtor or obligation incurred by the debtor.") (internal quotation omitted); *see also E.F. Hutton & Co. v. Hadley,* 901 F.2d 979, 986–87 (11th Cir. 1990) (holding, where debtor was *in pari delicto* with non-debtor defendant, that bankruptcy trustee did not have standing to bring negligence and conversion claims belonging to certain creditors).

F.3d 1194, 1202 (11th Cir. 2001).  Furthermore, a conspiracy claim must sufficiently allege that

there was a "mutual understanding" between the parties to commit the underlying tort.

*Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC*, 305 Ga. App. 283, 294 (2010) (the

essential element of conspiracy is the existence of a "mutual understanding" as to how the parties

will accomplish an unlawful goal).

31.     Here, the Plaintiffs raise no allegations that: Synovus knowingly made false

representations;[19] any party relied on any such representations; or those parties were damaged

because of those representations.  Similarly, there are no well-pleaded allegations that there was

any "mutual understanding" between Synovus and the Debtors to commit the underlying fraud.

Ultimately, the Plaintiffs' version of events, accepted as true, allege no facts that support the Fraud

Claims against Synovus.

32.     For this same reason, and as set forth above, the Fraud Claims also fail to satisfy

Federal Rule 9(b) and should be dismissed for failure to state a claim upon which relief can be

granted.

> b)     The Negligence Claim fails to state a claim upon which relief can
> be granted.

33.     Count VIII should also be dismissed because the Complaint fails to allege facts to

support recovery under the theories of negligence and gross negligence.  To state a claim for

negligence, a plaintiff must allege facts showing: (i) the existence of a duty; (ii) an omission to

exercise ordinary and reasonable care in connection with that duty; (iii) an injury resulting to the

plaintiff; and (iv) that the defendant is the proximate cause of the injury.  *Midwest Feeders, Inc. v.

Regions Bank (Inc.)*, 2016 U.S. Dist. LEXIS 135054, *14 (M.D. Ga. Sept. 30, 2016).  Gross

---

[19] *See* n.16, *supra.*

negligence requires a higher duty of care than ordinary negligence.  *See Whisnant v. Whisnant*, 116 Ga. App. 598, 606 (1967) (holding that "[g]ross negligence is equivalent to failure to exercise even a slight degree of care[;] [i]t is materially more want of care than constitutes simple inadvertence").  Here, the Complaint fails to allege facts necessary to prove certain elements of a negligence claim.

34.     *First*, the Complaint fails to allege the existence of a duty owed by Synovus recognized by applicable law and a breach of any such duty.  Establishing the existence of a duty is a minimum threshold legal requirement and is a question of law for the court.  *In re Rollaguard Sec., LLC*, 570 B.R. at 886.  "A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle."  *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 533 (2013).  Here, the Plaintiffs merely allege that Synovus owed a duty of care to the Debtors, was required to conform to a certain standard of conduct to protect the Debtors, and breached that duty by, in essence, entering into a banking relationship with them.  (Compl. ¶¶ 189–90).  However, the Complaint fails to cite a specific duty.  Moreover, despite alleging that Synovus had a duty to monitor the Debtors' principals' use of funds, the Complaint lacks any allegation that the Debtors' principals or agents were not authorized to take any actions relative to the Debtors' accounts with Synovus or to effectuate any of the alleged Transfers.  Thus, the Plaintiffs seek to impose upon Synovus a duty that goes beyond those duties imposed on banks under Georgia law.  *See* O.C.G.A. § 7-1-352 (a bank is generally not liable for disbursing funds at the direction of an authorized agent of the principal); *see also* § 11-4-401 *et seq*.  As such, the Complaint does nothing more than

- 19 -

present conclusory allegations that fail to allege any cognizable statutory or common law legal duty owed to the Plaintiffs or a breach thereof.[20]

35.     *Second*, even if the Complaint actually identified a duty owed by Synovus, the Complaint establishes that Synovus' alleged breach of this duty was not the proximate cause of the Debtors' alleged injuries.  A breach of duty cannot be the proximate cause if it did nothing more than furnish the condition and another party's intervening act caused the injury.  *See Jackson v. Real Prop. Servs. Corp.*, 268 Ga. App. 675, 676–77 (2004).  It is well settled that there is no proximate cause where there is an "independent, intervening act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant, and which was sufficient of itself to cause the injury." *CSX Transportation, Inc. v. Dean*, 269 Ga. App. 641, 643 (2004); *see id*. at 644 (an act is "foreseeable" if it is "a normal reaction to the conditions created by defendant").

36.     Here, the Complaint is unequivocal—the Debtors and their agents controlled, devised and marketed the alleged Ponzi scheme, furthered the alleged scheme through their misrepresentations to the Members, and exercised complete control over the flow and disposition of funds received therefrom.  *See* O.C.G.A. § 10-6-56 (a corporation is bound by the fraudulent conduct of its agent engaged in the corporation's business and on the line of business that the agent works); *Citrus Tower Boulevard Imaging Ctr., LLC v. Key Equip. Fin., Inc. (In re Citrus Tower Boulevard Imaging Ctr., LLC)*, 520 B.R. 892, 905–06 (Bankr. N.D. Ga. 2014).  Even accepting

---

[20] To the extent that the Plaintiffs intend to assert a claim based on a breach of duty owed to the Members, such a claim fails as a matter of law because Synovus did not owe a duty to non-customers.  *See, e.g., Midwest Feeders, Inc. v. Regions Bank (Inc.)*, 2016 U.S. Dist. LEXIS 135054, *15–16 (M.D. Ga. Sept. 30, 2016); P*romissor, Inc. v. Branch Bank & Tr. Co*., 2008 U.S. Dist. LEXIS 98472, at *13–14 (N.D. Ga. Oct. 31, 2008); *Hofschutle v. Suntrust Banks, Inc.*, 2021 U.S. Dist. LEXIS 218193, at *7 (N.D. Ga. Mar. 4, 2021); *cf* O.C.G.A. 7-1-352; *Atlanta Sand & Supply Co. v. Citizens Bank*, 622 S.E.2d 484, 488 (Ga. App. 2005).

the conclusory allegations as true, the Complaint merely recognizes that Synovus did nothing more than furnish the condition for the Debtors' alleged fraud—by opening and maintaining ordinary bank accounts—and, thus, cannot be the proximate cause of their alleged injuries.  (*See* Compl. ¶ 191) ("Defendant's conduct caused Debtors['] injury by facilitating the directors' and officers' breach of their fiduciary duty to Debtors."); *see Jackson*, 268 Ga. App. at 676–77; *Hofschutle v. Suntrust Banks, Inc.*, 2021 U.S. Dist. LEXIS 218193, at *7 (N.D. Ga. Mar. 4, 2021) (finding no proximate cause where the bank's only involvement in the alleged fraudulent transactions was to receive funds wired to them pursuant to the instructions provided by the plaintiff); *Wright*, 2020 Ga. Super. LEXIS 2264, *15 (defendant bank's opening of an account was not the proximate cause as a matter of law where none of the plaintiff's allegations of fraud involved acts by the bank but were performed by a third-party bank customer who perpetrated the fraud).  Finally, Synovus' alleged breach cannot be the proximate cause because the Mirror-Image Complaints, and the allegations concerning those defendants included in the Complaint, confirm that the Debtors' and their principals' fraud existed independent of Synovus as the Debtors maintained accounts with other financial institutions that were used in perpetuation of the Debtors' fraud.  (Compl. ¶¶ 68–70, 76–80, 82, and 93).

37.     Because the Plaintiffs cannot show as a matter of law that Synovus' alleged breach was a proximate cause of the Debtors' damages, the Negligence Claim must be dismissed for failure to state a claim upon which relief can be granted.

c)      <u>The Unjust Enrichment Claim fails to state a claim upon which relief can be granted.</u>

38.     To plead a claim for unjust enrichment, a plaintiff must show that: (i) the defendant induced or encouraged the plaintiff to provide something of value to defendant; (ii) the plaintiff provided the benefit to defendant; (iii) the plaintiff expected that the defendant would be

responsible for bearing cost thereof; (iv) the defendant knew of benefit being given to it; and (v) the defendant affirmatively chose to accept the benefit or failed to reject it. *See Estate of Crook v. Foster*, 333 Ga. App. 36, 39 (2015). Moreover, a claim for unjust enrichment only applies when there is no legal contract governing the conduct of the parties. *See Techjet Innovations Corp. v. Benjelloun*, 203 F. Supp. 3d 1219, 1234 (N.D. Ga. 2016).

39. Here, ignoring legal conclusions and conclusory statements, the Complaint contains no allegation that the Debtors were induced or encouraged to provide value to Synovus or that the Debtors expected Synovus to bear the cost of any value allegedly given. *See Stenger v. World Harvest Church, Inc.*, 2006 U.S. Dist. LEXIS 15108, at *11–12 (N.D. Ga. March 31, 2006) (the unjust enrichment claim failed because "the facts of [the] case, simply stated, do not neatly fit in the unjust enrichment theory" because there was no evidence that plaintiff acted with any expectation that defendant assumed or would bear some correlative obligation in accepting monies). Moreover, as the relationship between the Debtors and Synovus was one of account holder and depository bank—a relationship governed by contract—the unjust enrichment fails as a matter of law. Consequently, the Unjust Enrichment Claim should be dismissed.

> d) <u>The Civil Conspiracy Claim must be dismissed because it fails to state a claim upon which relief can be granted.</u>

40. Civil Conspiracy Claim must be dismissed because the Complaint fails to adequately allege that Synovus "acted in concert" with the Debtors to commit a tort. "To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Jenkins v. Wachovia Bank, Nat. Assn.,* 309 Ga. App. 562, 567 (2011). The essential element of an alleged conspiracy is proof of a common design establishing "that two or more persons in any manner, either positively or tacitly, ***arrive at***

*a mutual understanding* as to how they will accomplish an unlawful design." *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 649 (2006) (emphasis added).

41.     Here, ignoring legal conclusions and conclusory statements, the Complaint fails to allege that Synovus and the Debtors or their principals "acted in concert" or came to a mutual understanding as to how to accomplish any tort.  Moreover, because the Plaintiffs' tort claims fail for the reasons set forth above, there can be no claim for civil conspiracy.  *Jenkins,* 309 Ga. App. at 567 ("[a]bsent an underlying tort, there can be no liability for civil conspiracy.")*.*  For these reasons, the Civil Conspiracy Claim should be dismissed.

> e)     <u>The Punitive Damages Claim and Fee Claim must be dismissed because they fail to state a claim upon which relief can be granted.</u>

42.     The Punitive Damages Claim and Fee Claim must be dismissed because they are based on nothing more than legal conclusions and unsupported conclusory statements, and are contingent upon the success of the prior asserted claims—all of which fail for one reason or another.  Further, an award of punitive damages is appropriate under Georgia law only "when it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  "Something more than mere commission of a tort is necessary for the imposition of punitive damages. Negligence alone, even gross negligence, will not support an award of punitive damages." *Lewis v. Suttles Truck Leasing, Inc.*, 869 F. Supp. 947, 949 (S.D. Ga. 1994).  Even if the Plaintiffs' tort claims survive this motion to dismiss, the Complaint contains no well-pleaded allegations supporting that Synovus' alleged conduct rises to the level of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  Moreover, with respect to the

- 23 -

Fee Claim, the Complaint is devoid of any factual allegations whatsoever that, if true, would show that Synovus "acted in bad faith, [has] been stubbornly litigious, and caused the Plaintiffs unnecessary trouble and expense." (Compl. ¶ 216).

43.     Accordingly, the Punitive Damages Claim and Fee Claim should be dismissed.

**D.    The Complaint Should be Dismissed because it is a Shotgun Pleading That Violates Federal Rule 8(a) and Eleventh Circuit Law.**

44.     In addition to the numerous pleading deficiencies set forth above, the Complaint is also a textbook example of a shotgun pleading. "Shotgun pleadings" violate Federal Rule 8(a) and should be dismissed. *Vibe Micro, Inc. v Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). A shotgun pleading "invariably begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). It then "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief." *Liebman v. Deutsche Bank Nat. Trust Co.*, 462 Fed. Appx. 876, 879 (11th Cir. 2012). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Courts in the Eleventh Circuit have little tolerance for shotgun pleadings. *See generally Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979–80 at n.54 (11th Cir. 2008) (collecting numerous cases), abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

45.     Here, the Complaint is a textbook shotgun pleading. It is replete with conclusory, vague statements and facts immaterial to Synovus and the allegations raised against it. Only seven (7) paragraphs of the Complaint appear to contain factual allegations relating to Synovus and its alleged conduct or lack thereof, while over eleven (11) pages are dedicated to the defendants in

the Related Adversary Proceedings.  (Compl. ¶¶ 68–104); *see Weiland*, 792 F.3d at 1322 (stating that the second most common type of shotgun pleading is a complaint with conclusory and immaterial facts that are not obviously connected to any particular cause of action).  Moreover, each count in the Complaint incorporates and adopts all preceding paragraphs, resulting in Synovus having to sort through factual allegations not material to a specific count.  *See id.* at 1321 (stating that the most common type of shotgun pleading is a complaint where each account adopts the allegations of the preceding counts).

46.    Accordingly, the Complaint should be dismissed.  *See Mukamal v. BMO Harris Bank N.A. (In re Palm Beach Fin., L.P.)*, 2012 Bankr. LEXIS 6305, at *9 (Bankr. S.D. Fla. July 3, 2012) (dismissing a complaint for violating Federal Rule 8(a) where it, among other things, reasserted the allegations of all paragraphs in each claim).

## <u>CONCLUSION</u>

For the reasons discussed above, the Plaintiffs' Complaint should be dismissed.

*(Signatures on following page)*

Dated: May 31, 2024

Submitted by:

/s/ *David A. Wender*
David A. Wender  (748117)
Nathaniel T. DeLoatch (216330)

EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309-3996
404.853.8000 (t)
404.853.8806 (f)
davidwender@eversheds-sutherland.com
nathanieldeloatch@eversheds-sutherland.com

*Counsel for Defendant Synovus Bank*